Yes, continuing our third case for this morning is Red Barn Motors v. NextGear Capital. Ms. Delaney. May it please the Court. Kathleen Delaney for Plaintiff Appellants, Red Barn Motors. NextGear charged about 20,000 used car dealers interest and fees on funds that had not been advanced. The central issue here is whether the take-it-or-leave-it form contract signed by all of these dealers allowed NextGear to charge premature interest and fees. NextGear argues yes in all instances, and Red Barn argues no in all instances. Nobody is arguing that any extrinsic evidence would NextGear created this problem by drafting an ambiguous contract, which should be construed against the drafter. Now you point to cases that establish the claims involving a breach of form contracts can be resolved on a class-wide basis even when ambiguities are involved. But the question here isn't whether the case, it seems to me that the question is whether the court could not have disallowed the class. Is there any case you have holding that the court could not deny class status when a contract was ambiguous? The cases that bear on this issue are ones that talk about the fact that form contracts are well-suited for class treatment, which is what our case is. And Judge Pratt did certify this case as a class action. Right, but that's not an answer to the question. I'm not sure I have an answer to a double negative case. All right, is there any case holding that the court couldn't deny class status where a contract is ambiguous? Surely you understand that. I don't think there's an automatic bright line that if there's a form contract, then it's automatically class certified or vice versa. So could I maybe phrase it, break it down a little bit? This contract is allegedly ambiguous about whether the interest can start running the date when the car is delivered to the used car dealers after the auction or whether interest can start running only at the time next year advances the money. That, as I understand it, is the issue and what does the contract say? I also understand the district court judge to have said, actually at both stages, that the extrinsic evidence that had been proffered was not useful, that this was a construe the contract within its four corners situation. It doesn't necessarily always have to be that way, but she thought this contract was that. So that's kind of part one, whether that's where we are on the question about whether this is an ambiguous contract, because there are plenty of ambiguous contracts where extrinsic evidence of the negotiating process isn't terribly useful. You've argued there's an integration clause here. There are other instances where there doesn't happen to be any extrinsic evidence, and then you just resort to presumptions. You do the best you can. The other thing is how the district court handled the decertification. So it's one thing to say the district court had discretion to certify the class or not to certify the class or to revisit certification and decertify. It's another thing to say, does the district judge have a procedural obligation, both at the certification stage and at the decertification stage, to go through the criteria of 23A and 23B-3 and explain what's the problem? You know, why are we decertifying? And I understood you to be arguing that that procedural step at the second decision, at the decertification decision, was not undertaken. That's correct. The first order where the class was certified did march through all the requirements in some 14 pages of analysis. The decertification order, about six months later, spent about two sentences on the analysis. So maybe that's why we're guessing about the extrinsic evidence, because we don't have that kind of analysis from the district court explaining what exactly is missing, what exactly would be different for all 20,000 minus 12, or whatever it is, dealers. That kind of explanation would allow us to get our hands around whether there was an abuse of discretion or not. But the district court did make factual findings that go to the heart of this issue, stating that the plaintiffs were unaware of when Nexgear paid the auctions on their behalf, and Nexgear's account executives were also unaware when Nexgear paid the auctions, so they were unable to inform the plaintiffs or other clients when the auctions were paid. So I'm trying to figure out how you want to use that evidence, because I saw that, and I thought you were using that to show that, at least at this stage, any kind of course of dealing argument would be difficult to make, and that I thought you were also relying on the contract to say that changes stemming from later developments, whether course of dealing, whether later conversations, couldn't be embodied in the contract until there was a writing anyhow. Correct on both counts, but the fundamental point here is that all the different types of extrinsic evidence that Nexgear is pointing to and arguing require individualized analysis, all of those result in class-wide treatment. They lend itself to class-wide treatment, because the account representatives didn't know that the interest was being charged prematurely. Therefore, what they told our clients is of no moment, because they didn't know the answer themselves. Well, it suggests that, I mean, a reasonable inference would be that that wasn't even a topic, if they didn't know about it. Well, but all of that happened after contract formation as well, and the contract also has a no modification or waiver provision that says it can't be changed after the fact without a writing signed by both parties, and that didn't happen here either. Same issue with the account statements and the web information that's available across the class. None of that revealed the answer to this question of when did the interest start being charged. Help us understand, then, what relief you're requesting. We're requesting— Do you want a reversal with regard to the certification? Correct. The last resort case law, there's a lot of discussion about when we get into contra pro forentum. We get to contra pro forentum. You're asking that to happen now or on remand? Either way. I mean, our primary goal here is to get our class reinstated and get the case remanded for trial on the breach of contract claims. So it's a 23-F appeal, of course. Exactly. So that's all that's really here. Now, of course, the district court, in considering the summary judgment motion, stated that the parties had evidences to conversations between various party representatives about next year's interest practices, but that the evidence was not undisputed and would require a trial. Isn't that the type of extrinsic evidence that would support the court's decertification of the class? Your Honor, I disagree because all of the categories of extrinsic evidence that have been pointed to apply equally across the class. And next year is not arguing that anything that one particular account representative told one particular class member would result in a different interpretation of the contract for that particular class member. They're asking that uniformly across the class, the contract be interpreted to authorize them to prematurely charge interest. We believe the contract does not allow them to do that. Would I be wrong if I thought that the integration clause of the contract addresses only the modification or amendment of the contract? That would be incorrect. It's a broader provision than that. And it basically says, it's cited in our brief, and I have it here somewhere. I thought it was one of those that said nothing that's been said before this contract was entered into can vary or change the terms of the contract. The deal is the deal, and the deal is in the four corners of the document. And then there's another provision that says it can't be modified on a going forward basis without a writing reduced to both parties. The other important point to note here is that this is a take-it-or-leave-it contract. The company's representative testified in less than one-half of 1% of cases, was there any consideration of negotiation on a one-on-one basis? Can you put a number on that? He said fewer than 10 out of 20,000. Thank you. The general counsel of the company described the contract as, quote, kind of like a credit card application or a credit card agreement. It's as if NextGear is giving credit cards to our used car dealer clients that they can only use at auction. And then they're charging them interest on cash advances when the advances haven't even happened yet. So that's what's happening here, and it happened across the class. Irrespective of when they signed their contract, they all signed the same contract. It was in use for a number of years until 2013. They changed the language to address this problem. Well, they moved arbitration, didn't they? They changed the contract on multiple levels in order to avoid the problem. But they created the ambiguity in a form contract. They provided information that was opaque both to their own employees and to their customers about when the interest and other fees would begin to be charged. And we think this case is just like the Sushinet case and the Newman case, and that ambiguities in take-it-or-leave-it contracts ought to – they do meet Rule 23's commonality and predominance requirements, and they can be resolved by looking at the defendant's uniform conduct across the class. Additionally, we reiterate the point that ambiguities in form contracts should be construed against the drafter next year who created the problem. Do you need that? I mean, Indiana seems more open to extrinsic evidence than you're suggesting, but it also seems to lean to the position that the contraprofrantum principle is really a last resort. You try other form. You try exclusio unius. You try whatever other canons of construction you'd like to have. And so I don't know whether we've boiled down to that point here or whether you're asking us to insert it too soon. At this point, we really are at the last resort. We were about six weeks away from trial at the time that the class was decertified. Discovery had closed. We were ready to try the case. You've emphasized that, so no other evidence was going to come into this record. Exactly, and as the district court found as a fact finding that's on an abuse of discretion standard, there was no helpful evidence on that point because NextGear didn't tell its account executives and didn't tell its customers when they started lending the money. So they like to argue that after the fact, some of our clients learned about this timing issue, but they learned that they were being overcharged after they had already signed a contract that they were stuck with, and none of that bears on the meaning of the contract that was signed in the first place. I'd like to reserve the balance of my time, please. Okay, that's fine. Mr. Byrne. Take your time. Thank you, Your Honor. May it please the Court, let me begin with a little bit of context here. The practice that's being complained of is as conventional as it could be. The idea is this, when a lender extends a binding commitment of credit, they're entitled to be paid. But they haven't extended the credit. I mean, interest is typically a price for the use of money, and the money isn't being used until it's been extended. I presume that NextGear has its money in income-earning accounts, and the money is happily earning income until it's removed from those accounts and sent over to the auction house. Well, Your Honor, I beg to differ on the point. Don't put your money in an income-generating account? Well, there's no evidence of that particular practice in the record here. Any business I can think of would do that. Well, any business you can think of that lends money, though, Your Honor, would also charge you a fee upon the commitment for binding credit. But that's not what you're doing. You're charging interest. Let me ask you this question. It's a fee for lending. No, no, no, no. I mean, sometimes they're origination fees, you know, $100 for origination fee, and then the interest is going to be 3% once the money is loaned. Let me ask you this. Is it your position that of these 20,000 different agreements, 7,000 of them, once we look at all of the evidence, are going to turn out to be agreements in which it's okay to charge the interest from the date of the auction, and 13,000 of them are going to turn out to be agreements when it's not okay to charge interest from the date of the auction? Your Honor, that's not our position about the text of the agreements. Well, this is why my reason for asking that is unless you're willing to concede that this particular provision is going to vary agreement by agreement, I don't know why this issue isn't suitable for class treatment. Because if your position is that that feature at least is common to the full class, you could have an issue class. Well, Your Honor, an issue class hasn't been requested. Let me put that aside for a second. Now here. It would be the same as this, I mean, as they argue, very similar to Suchanuk class. It really is. You know, all class actions in the end have an individualized stage. When relief is granted, maybe some used car dealers only have a few cars and maybe some have very large lots, so amounts are going to differ. There are a lot of things. The period of time might differ. But whether this was a legitimate clause in the contract, you just told me it's going to be the same across all 20,000 contracts. Well, Your Honor, that clause just begins to tell the story. These are ongoing commercial relationships. Let's consider the testimony we had from two of the three class representatives. They both admitted that they knew that they were being charged interest upon the time of the purchase of the vehicle. But they didn't say they knew as of the time. First of all, whether that's a permissible practice when they've been, when they were already bound by the contract, you know, you're telling me something that's different, sort of apples and oranges. You know, what does the contract say and is the interest being charged? This is a state law claim, right? This is just diversity jurisdiction. State law breach of contract claim, Your Honor. Yeah, it's a state law breach of contract claim. So when they said we'll charge you interest on advances, is this an advance? It's a very straightforward question. Well, Your Honor, it could be seen that way under the contract. Our position in the district court was the contract wasn't ambiguous, that we were entitled to do this. But the district judge found that the contract was ambiguous. She wanted to hear more because she heard evidence. There was evidence of these conversations showing the course of performance of the parties. But the thing is, could course of performance vary? And also, are you going to stand up there in the district court, or were you planning on standing up there in the district court and saying an advance under some of our contracts starts the day the money is sent over to the auction house, but an advance in some of our other contracts, depending on what we've been doing with the dealer or what was said during the negotiations, can start on the day of the sale? Was that going to be what you were going to say? No, Your Honor, that was not our position. The text of the agreement is the text, but the text just begins to tell the story if it's going to be told fairly. Why does it, if there is an integration clause and a clause that says no changes except in writing? Well, there is an integration clause for the first thing, Your Honor. There's a clause called an integration clause, but if you read the language, it's simply an anti-modification clause. And the doctrine of waiver, there's an anti-waiver provision, a separate one in the agreement, but it applies only to the lender. It doesn't go both ways. So you could have a waiver of breach here. And, in fact, the evidence, the actual evidence that the district judge looked at, with respect to— I can't tell what evidence she looked at. I mean, that's my procedural problem with this. You may be right about a lot of this substance, but her failure when she decertifies to explain exactly which elements have persuaded her that this is no longer suitable for class treatment leaves me at something of a loss to know how even to evaluate what she did. Well, Your Honor, there's 50 pages of orders here from the district judge just on these last two issues. No, no, no, but it's not a 50-page decertification decision. She just whips through that pretty quickly. Well, Your Honor, the standard of review here, of course, is abuse of discretion. Exactly, but even under an abuse of discretion, this Court has procedural requirements for the district judges that you can't just sort of say, yes, you know, thumbs up, thumbs down, and you still have to affirm me on an abuse of discretion standard. Your Honor, with due respect to Judge Pratt, she did more than thumbs up, thumbs down. This is a single breach of contract claim. There were two state laws applicable, mostly Indiana, mostly the same. It's not one of those abuse of discretion cases where the district judge faces multi-state law applicability, lots of elements of different claims. In those cases, abuse of discretion because of inadequacy of the writing of the order has sometimes been found. This was a simpler determination based on the discussion the district judge offered. It's on page 8, and it really just zips right through. I mean, I don't know what she's looking at. She has a little reference to patent ambiguity, then suddenly says they're ambiguous, extrinsic evidence, not appropriate. Boom. And I don't know what she thinks the extrinsic evidence is. I don't know which issue she thinks it pertains to. Is it commonality? Is it typicality? Is it predominance? Is it superiority? Given your concession that the contract is the contract, why is it relevant? I don't see anything. She says that there is an absence of predominance and commonality. I don't understand why. I see undermines, she says, the elements of commonality and predominance, but I don't understand how, given your position, that the contract is actually the same contract for everybody. Because on the breach of contract claim, Your Honor, common issues do not predominate because the contract itself in this ongoing business relationship, last year's, there's regular contacts with account representatives. So there's some people after the fact for whom you cannot charge interest from the date of the sale, and there are other people post-contract that you can charge interest post-sale. Is that your position? Your Honor, that could well happen. Here's how the testimony of the two class representatives about their ongoing performance really matters. They asked about, one of them asked about the very issue that's in front of us and was told no, interest is charged from the date of sale. So the remarks about no one knowing the date of the sale are wrong. That's a different topic entirely. That doesn't mean that an account representative sitting on the showroom floor talking with a dealer can say this unit was paid, the auction was paid on such and such a date. He doesn't have that, of course. But he knows when interest begins to be charged because it's entirely, for one thing, it's an industry standard practice. We say the contract permits it, and it's completely fair given that an extension of credit has been made. Those are merits arguments. I don't know that that's helping me much understand why this isn't across the board an issue for every one of these contracts. Your Honor, with due respect, I in the summary judgment motions that would be relevant to the interpretation of the ambiguous contract, of it being ambiguous, actually, which I know is, you know, you haven't brought that before us because you've both agreed here that it's ambiguous. Or what evidence would be relevant to the defenses of waiver, ratification, modification, and estoppel? Your Honor, as to the class, let's take the class representative's evidence. That's what we have before us. This was a decision on whether to continue to certify the class. Two of the three class representatives admitted that they knew there was this timing difference that is the basis for the claim of breach of contract, yet they continued to borrow. They were okay with that, and we all know from basic contracts that one of the best ways of figuring out a contract interpretation question is how the parties perform the contract. And that would be relevant to every one of these 27,000 used car dealers. And to certify the class would be grossly unfair to the defendant because only part of the story could be told in a class action trial. The defendant would have its arms tied behind its back. And that's why it's important to be able to tell the whole story on the breach of contract claim. It only begins with that form contract. It doesn't end with it. That's only the beginning of the relationship that went on for an extended period of time. But was that the reasoning that the district court was giving? That's what's opaque to us is how to get to that. She alluded to these two orders are linked, Your Honor, and that makes it a little bit of a slight accessibility problem in figuring out that very point. But she alluded to the evidence of conversations by both sides and concluded that she wanted to hear more at a trial about that but that this case couldn't proceed on a class action basis. The question before the court in a deferential standard of review is that, given the record, given the context, was that decision within the broad range of discretionary decisions the district judge might have made? I don't believe that even on a deferential standard, the court wants to get into wordsmithing the district court's opinion so long as the record supports it and the district court's deliberative process is apparent from the order. That's the problem, though, the last thing you touched on. The district court's deliberative process is not apparent from the order because we don't know which of the – I mean, you have your theory about which of the extrinsic evidence may have been particularly persuasive and which issues it might have gone to. We don't know whether she agreed with you, whether she had some other theory, whether that theory is a sound one because she never spells it out. Well, Your Honor, I would say, with due respect, it seems that she agreed with us because she decertified the class and there's enough – We don't know why she did, though. Well, she found no commonality in predominance. She cited the Averitt case from the Eighth Circuit, which is right on point, another case involving a breach of contract claim, a classic breach of contract claim, with an ambiguity, two different interpretations, communications between the sales representatives and the plaintiffs. But you keep talking about an ambiguity, and yet your view, of course, is that this contract is not ambiguous at all, that it allows your client to begin to charge interest from the day of the sale, even though no monies have been advanced, and it uses the word advance, until some later date. You know, sometimes maybe it's when title passes. Maybe sometimes it's some other date. But your view is that that initial sale is the date and the word advance in the contract doesn't mean monies advanced. It just means sale somehow, you know, or some other word. So I don't know what's ambiguous about that. I think that's what they think it means, too. And the question is, is your practice of collecting the money one which is not authorized by the contract? Well, that's the ultimate question, Your Honor. This is, of course, the 23-F appeal. So we're only here on whether or not the class should be certified. And that's why we need, you know, look, I sort of think of this sauce for the goose, sauce for the gander. The Supreme Court emphasized in the Walmart case in particular coming to my mind that district courts do have a job at the class certification stage. They've got to resolve facts about predominance and about commonality. They sometimes need to have daubert hearings, which doesn't happen to be this case, but it happens with some regularity. They've got to take a deeper dive into this than had been thought the case prior to Walmart. So, okay, the district judges are largely doing that. And what doesn't happen here is that same care with explaining and resolving facts at the decertification stage, certainly within her power. No question about that. Rule 23, as she correctly says, allows her to revisit this. I wouldn't question that for a minute, but we don't know why she did it.  of the district court's work here since the beginning of this case in 2013, we submit it would be a waste of judicial resources now just to remand for the district judge to add a few sentences to an order that is otherwise sound. Now, make one final point that was to respond before my time expires. The point made by the district judge that the evidence was not useful, the extrinsic evidence was not useful, is only addressing the point of whether or not it was the basis for summary judgment, which she said it was not because it's disputed. The evidence was not nonexistent. It was simply disputed. So we would ask that the court affirm the order. Okay. Thank you very much. Ms. Delaney. Thank you. I'd like to begin by answering the question that I misunderstood from Judge Rovner early on. We cited a case on page 8 of our reply brief, Similo v. Southwestern Bell, a First Circuit case where the First Circuit reversed a district court's decertification of a class that had previously been certified, and that was involving cell phone consumer contracts. So sorry that I didn't understand you at first, but I hope that helps. In terms of the analysis in Judge Pratt's order certifying the class versus the order decertifying the class, when she certified our class, she walked through the elements and said specifically on commonality, quote, the central common question, whether the floor plan agreement allowed Nexgear to charge interest and fees on money not yet actually loaned will produce an answer that can lead to resolution of the claims for the class in one stroke, quoting Walmart. That's the kind of analysis that we don't find in the decertification order, and there's no explanation for how we go from commonality to six months later, no commonality on the same record. In the first order certifying the class on predominance, Judge Pratt wrote, quote, given the specific nature of the plaintiff's breach of contract claim in this case, the elements of this claim are capable of proof at trial through evidence that is common to the class rather than individual to its members. And if you listened carefully to the answer to your question, Chief Judge Wood, Nexgear is not claiming that 7,000 people would have one interpretation and 13 another. They want the same interpretation of the language across the class. That's why this is a class case. And the language of the contract does not allow them to charge interest earlier than when funds are advanced, and advance is defined in the contract as any loan or payment in any amount made pursuant to this note by DSC to dealer or on dealer's behalf to a third party. They're charging interest and fees before they make payments, and their definition of advance does not allow them to do that. That's why we're here on this case. Nexgear is the largest automotive financing company in the country, and it imposed its form contract on the dealers on a take-it-or-leave-it basis. Nexgear allowed the terms of the contract to be revised for individual dealers in fewer than 10 out of 20,000 contracts during the class period. Although they paint this relationship as between equally sophisticated businesses, it bears many of the relationship hallmarks of a credit card application as testified to by their own general counsel. We ask that this case be remanded and that our class be reinstated for trial on the breach of contract claim. Thank you. All right. Thank you very much. Thanks to both counsel. We will take the case under advisement.